UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
Cesar MUNOZ,

                Petitioner,

                                                                 MEMORANDUM AND ORDER

      -against-                                   07-CV-2080 (ILG)

UNITED STATES OF AMERICA,

                Respondent.
------------------------------------------------x

GLASSER, Senior United States District Judge:

On July 28, 2008, this Court issued an order, familiarity with which is assumed, dismissing in part Cesar Munoz's petition pursuant to 28 U.S.C. § 2255 for an order vacating his conviction and sentence in the underlying criminal action, United States v. Munoz, 04-CR-473 (ILG). See Munoz v. United States, No. 07-CV-2080 (ILG), 2008 WL 2942861 (E.D.N.Y. July 28, 2008) (slip copy) ("July 28 Order"). Mr. Munoz now moves for reconsideration of that portion of the July 28 Order which held that this Court's failure to explicitly advise Mr. Munoz of the right to court-appointed appellate counsel for criminal appellants unable to afford private representation was, at most, harmless error, and that Munoz's Sixth Amendment right to counsel on appeal was not violated by the fact that his appellate brief was allegedly researched and written by Dennis Deters, a paralegal based in Minnesota, and submitted to the Second Circuit by Lorenzo Palomares, an attorney based in Puerto Rico.[1] For the reasons stated below, Mr.

---

      [1]      In support of the pending motion for reconsideration, Mr. Munoz submitted two additional declarations: one from Andrea Hirsch, Mr. Munoz's attorney, and the other from Professor Ursula Bentele of Brooklyn Law School. Ms. Hirsch's declaration recounts a conversation she had with Maribel Lopez, Mr. Munoz's wife, following the issuance of the July 28 Order, in which Mrs. Lopez provided additional details about her interactions with Deters and Palomares, and Professor Bentele's declaration explains that, in her capacity as Director of the Capital Defender and Federal Habeas Clinic and Brooklyn Law School, she understands herself to be ethically and legally bound to oversee the law students' work on individual cases much more closely than Palomares is alleged to have overseen Deters's work.
      In resolving the pending motion, the Court shall not consider either declaration because all of the evidence

1

Munoz's motion for reconsideration is denied.

## DISCUSSION

Mr. Munoz raises two principal points in his motion for reconsideration: first, that the failure to advise him of his right to court-appointed counsel on appeal, as arguably required by the Second Circuit's holding in <u>United States ex rel. Smith v. McMann</u>, 417 F.2d 648 (2d Cir. 1969), was not harmless because, contrary to the Court's holding, Mr. Munoz was not represented by an attorney on appeal in anything more than a purely formal sense because Palomares made no substantive contribution to the preparation of Mr. Munoz's appellate brief. Second, he argues that he could not have knowingly waived his Sixth Amendment right to counsel by retaining Deters because, since both the Court and his trial counsel failed to inform him of the right to appointed counsel on appeal, he was not aware that he had that right. To address the second argument first, Mr. Munoz's motion for reconsideration wrongly conflates two distinct issues: first, whether Munoz waived his general Sixth Amendment right to counsel on appeal, and second, whether by knowingly retaining a non-lawyer to prepare his appellate brief he waived his right to object to the unlicensed status of his purported legal representative pursuant to the per se rule established by <u>Solina v. United States</u>, 709 F.2d 160 (2d Cir. 1983) (Friendly, J.), and <u>United States v. Rondon</u>, 204 F.3d 376 (2d Cir. 2000). <u>Solina</u> and <u>Rondon</u> held that where, unknown to a criminal defendant, the defendant's attorney is not licensed to

---

contained therein was available to Mr. Munoz prior to the July 28 Order and could have been presented to the Court in his initial Section 2255 petition. See, e.g., <u>Lightfoot v. Union Carbide Corp.</u>, 110 F.3d 898, 909 (2d Cir. 1997); <u>Jones v. Carolina Freight Carriers Corp.</u>, 152 F.3d 918, at *1 (2d Cir. 1998) (Table) ("A motion for reconsideration is not properly used as a vehicle for the introduction of new evidence that could have been presented to the court prior to the decision of which reconsideration is sought."). Moreover, as was the case with some parts of Ms. Hirsch's declarations in support of the original Section 2255 petition, her summarization of her conversation with Maribel Lopez is entirely hearsay. The allegations contained in Ms. Hirsch's declaration should have been submitted to the Court in the form of an affidavit from Mrs. Lopez, not a declaration from Ms. Hirsch. Moreover, the declaration of Professor Bentele implicitly (if not explicitly) suggesting that Palomares breached his legal and ethical obligations without having been heard in that regard and having no testimony or other direct knowledge from Deters regarding his relationship with Palomares, will also not be considered.

practice law, "and the lack of such authorization stemmed from failure to seek it or from its denial for a reason going to legal ability, such as failure to pass a bar examination, or want of moral character," the representation constitutes a per se violation of the defendant's Sixth Amendment right to counsel regardless of whether the unlicensed individual's performance was ineffective under the test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). As the Court noted in the July 28 Order, "Solina makes abundantly clear that the per se rule recognized therein applies only to situations in which the defendant was not aware of his attorney's unlicensed status." 2008 WL 2942861, at *38. The Supreme Court's discussion of waiver of counsel in Johnson v. Zerbst, discussed at length by the petitioner in his motion for reconsideration, is not applicable in the factual context of this case, in which the question is not whether the defendant consented to proceed without legal counsel, but whether, having knowingly retained an unlicensed individual to perform legal work, he is entitled to subsequently assert that his Sixth Amendment rights were violated by his chosen representative's unlicensed status.

In any event, the point is largely academic: as the Court observed in the July 28 Order, Mr. Munoz was represented on appeal by Mr. Palomares, who it is undisputed is a licensed attorney admitted to the bar of the Court of Appeals for the Second Circuit. Therefore the fundamental premise underlying Mr. Munoz's Solina argument—i.e., that he was represented on appeal by a non-lawyer—must be rejected. Mr. Munoz's motion for reconsideration of this portion of the July 28 Order is therefore denied.

Turning to the first point raised in Mr. Munoz's motion for reconsideration, it is equally clear that, even taking the facts alleged by Mr. Munoz as true, he has not established that he was deprived of his right to counsel on appeal by this Court's failure to specifically advise him of that

3

right at sentencing. Mr. Munoz's principal argument in support of reconsideration is that "whatever Palomares did vis-à-vis Munoz's appeal was too minimal to be deemed representation." (Memorandum of Law in Support of Motion for Reconsideration ("Pet. Mem.") at 2.) Specifically, Mr. Munoz argues that the Court's conclusion in the July 28 Order that "[e]ven accepting Mr. Munoz's allegation that Deters did all of the work on the appellate brief as true, that does not constitute a per se violation of Munoz's Sixth Amendment right to counsel because Munoz was principally represented by Palomares and was aware that Deters was not a lawyer," 2008 WL 2942861, at *37, misconstrues the scope of the right to counsel as interpreted by the Supreme Court in Powell v. Alabama, 287 U.S. 45 (1932), and Avery v. Alabama, 308 U.S. 444 (1940).[2] Both cases are easily distinguishable from Mr. Munoz's situation. In Powell, the trial court appointed "all the members of the bar" to assist the defendants prior to the commencement of trial, id. at 49, but did not appoint a specific attorney to represent the defendants until the morning of their trial. Id. at 56. The Court found the state trial court's "casual" treatment of the appointment of counsel insufficient to satisfy the Sixth Amendment,

---

[2] Mr. Munoz also attempts to distinguish a number of cases cited by this Court in the July 28 Order, including Johnson v. Norton, 435 F.2d 842 (1st Cir. 1970) (per curiam); United States v. Chapman, 448 F.2d 1381 (3d Cir. 1971); Peguero v. United States, 526 U.S. 23 (1999); and Soto v. United States, 185 F.3d 48 (2d Cir. 1999). The Court finds none of Mr. Munoz's distinctions persuasive. He argues that "neither Norton nor Chapman have any bearing on Munoz's case because in neither case did the defendant complain that, due to not have [sic] been advised of his right to appellate counsel, a non-lawyer authored his brief." (Pet. Mem. at 3.) Because the Court reaffirms its earlier holding that Palomares's representation of Munoz was constitutionally sufficient to satisfy his Sixth Amendment right to counsel, this argument is unfounded because Mr. Munoz's appellate brief was, like those in Capman and Norton, filed by an attorney. Mr. Munoz also argues that Norton is inapposite because the First Circuit ultimately reinstated Norton's appeal. This is true, but the First Circuit's reason for doing so was that, after filing the notice of appeal, Norton's attorney withdrew from the representation in violation of local rules, and the appeal was subsequently dismissed for failure to prosecute. This fact does not undermine the point for which Norton was cited in the July 28 Order: that the district court's failure to advise a defendant of the right to appointed counsel on appeal is harmless error where, as was the case here, the defendant subsequently obtains counsel and files an appeal.
     Mr. Munoz argues that the Court's reliance on Peguero and Soto is misplaced because "Munoz likely did not have independent knowledge of his right to appointed counsel on appeal," but this misses the point of the analogy. (Pet. Mem. at 3.) In its discussion of those cases, the Court acknowledged that "[i]t cannot be said. . . that Mr. Munoz knowingly waived a right that he may not have been aware he possessed," but cited Peguero and Soto for the proposition that, whether he was aware of the right to appointed counsel or not, Mr. Munoz cannot have been harmed by the failure to advise him of that right when he was ultimately able to obtain counsel and exercise his right to appeal. 2008 WL 2942861, at *37.

4

id., noting that

> during perhaps the most critical period of the proceedings against these defendants, that is to say, from the time of their arraignment until the beginning of their trial, when consultation, thorough-going investigation and preparation were vitally important, the defendants did not have the aid of counsel in any real sense, although they were as much entitled to such aid during that period as at the trial itself.

Id. at 57. These observations led the Court to hold that "[u]nder the circumstances disclosed, we hold that defendants were not accorded the right of counsel in any substantial sense. To decide otherwise, would simply be to ignore actualities." Id. at 58.

In Avery, the petitioner, having been convicted of murder in Alabama state court, argued that his right to counsel was violated by the trial court's denial of his appointed attorneys' request for a continuance of the trial so as to allow additional time for preparation. The Court ultimately held that the petitioner's rights were not violated, but recognized that in some circumstances "the denial of opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel." 308 U.S. at 446.

Mr. Munoz's situation does not remotely resemble those presented to the Court in Powell and Avery. First, unlike those cases, it is difficult to conclude on the basis of the facts alleged by Mr. Munoz that any governmental action was involved in the alleged deprivation of his rights. In Powell and Avery, the state trial court was directly responsible for denying the defendants the opportunity to confer with their attorneys and prepare a defense, whereas in this case, Mr. Munoz does not allege that he was prevented by the Court of Appeals or any other legal authority from communicating with his counsel. While he does allege that Palomares never spoke with him, this allegation, as the Court noted in the July 28 Order, is more appropriately reviewed under the

5

Strickland standard for ineffective assistance of counsel.  Moreover, Powell involved a situation in which the defendants were deprived of any meaningful legal advice prior to the commencement of their trial, as opposed to this case in which, as Mr. Munoz concedes, he received the benefit of legal representation provided by an unlicensed individual, Deters, whom he had himself selected to prepare his appellate brief.

United States v. Novak, 903 F.2d 883 (2d Cir. 1990), also cited by the petitioner, is likewise distinguishable.  In that case, the Second Circuit found that the defendant's right to counsel was violated by the fact, unknown to him at the time, that one of his two attorneys was admitted to practice law under fraudulent pretenses, where the other attorney, though duly licensed, did not attend the defendant's trial.  Novak is inapposite for two reasons:  first, the Second Circuit's holding was contingent on the fact that the defendant did not know of the defect in his attorney's admission to the bar at the time of the trial, and therefore had no reason to call on his backup attorney.  Id. at 890.  Second, the Second Circuit's concern in Novak was that, being improperly admitted to the bar, the defendant's trial attorney may have had an incentive to avoid "vigorous advocacy [which] could expose the attorney to investigation and consequent sanctions in connection with bar admission." Id. at 891.   No such conflict of interest existed here, because Deters's name did not appear on the appellate briefs, and he therefore need not have feared that confrontational advocacy in Mr. Munoz's appellate briefs would expose him to investigation or discipline.  Palomares, of course, was fully licensed and admitted before the Second Circuit, and therefore lacked any incentive to avoid confrontational advocacy that the defense attorney in Novak may have had.

Mr. Munoz also argues that because, as he alleges, Palomares did not exercise any meaningful supervisory authority over Deters, the relationship between Palomares and Deters is

6

not comparable to that between a practicing attorney and a law student or paralegal who prepares drafts of legal documents, notwithstanding the Court's comparison of those relationships in the July 28 Order. See 2008 WL 2942861, at *37. Mr. Munoz is correct that the relationship between Palomares and Deters, as described by Munoz, bears some unusual features not common to the supervisor-subordinate relationships mentioned in the July 28 Order.[3] But Mr. Munoz cites no legal authority establishing the contours of a legally acceptable supervisory relationship, nor is this Court aware of any such authority. Indeed, to ask the question is to invite abusive litigation from virtually every convicted defendant challenging the division of labor between his retained attorney and that individual's associates, paralegals, or other subordinates or independent contractors. The Sixth Amendment, so far as this Court is aware, does not place limits on the ability of a retained attorney to delegate work to others, and in the absence of direct authority from the Second Circuit, this Court shall refrain from attempting to impose such limits. This principle, if it is to be effective, must apply even to situations in which the "subordinate" unlicensed individual is alleged to have been the principal actor in the representation at issue. While Deters's activities may have violated some ethical proscriptions or local laws, they did not violate the Sixth Amendment.[4]

---

[3] (See Pet. Mem. at 12 ("[I]t is not usual for the unlicensed person to have his or her own company; to contract directly with the legal client; in an appeal, to unilaterally decide the issues to be raised; to give legal advice on his or her own regarding the next steps in the litigation; to set fees; or to be paid more than the licensed attorney is paid for the work done.").)

[4] On August 14, 2008, Ms. Hirsch sent a letter to the Court drawing the Court's attention to the decision of the district court for the Eastern District of Pennsylvania in Figueroa v. Vaughn, No. C.A.01-4405, 2005 WL 2212362 (E.D. Pa. September 9, 2005), which she argues supports Mr. Munoz's position in this case. In Figueroa, the district court granted the petition pursuant to 28 U.S.C. § 2254 and reinstated the petitioner's direct appeal in state court, holding that the petitioner's Sixth Amendment rights were violated when his appointed counsel, with the petitioner's consent, submitted an appellate brief that the petitioner had prepared pro se prior to the appointment of appellate counsel. The district court observed that "[n]o matter how well-acquainted a defendant may be with the legal system, his or her legal knowledge should not be substituted for the professional legal acumen of an attorney. An informal agreement between counsel and client does not obscure the duties of counsel." Id. at *6.

Figueroa is similar, but not factually identical, to this case. Here, Mr. Munoz was never left to his own devices in litigating his appeal; he had the benefit of legal advice, albeit, he alleges, not from an individual licensed to practice law. There has been no testimony, by affidavit or otherwise, as to the extent to which Palomares

**CONCLUSION**

The Court's discussion of the uncertainty reasonable men might have concerning the obligation of the Court to advise the sentenced defendant of his right to appointed counsel on appeal, given the absence of that requirement in Rule 32(j)(1)(C) and the inexplicable paucity of judicial authority on it and the uncertainty reasonable men might have concerning the applicability of the Sixth Amendment to this challenging fact setting gives rise to the uncertainty reasonable men might also have of the desirability "for a lower court to embrace the exhilarating opportunity of anticipating [an appellate court's resolution of the issues] which may be in the womb of time, but whose birth is distant." Spector Motor Service v. Walsh, 139 F.2d 809, 823 (2d Cir. 1943) (L. Hand, J., dissenting), vacated by Spector Motor Service v. McLaughlin, 323 U.S. 101 (1944). For the reasons stated above, Mr. Munoz's motion for reconsideration of the July 28 Order is hereby DENIED.

SO ORDERED.

Dated:  Brooklyn, New York
        August 29, 2008

_____/s/_____

I. Leo Glasser
United States Senior District Judge

---

reviewed the brief allegedly prepared by Deters. To the extent that Figueroa is inconsistent with this Court's holding, the Court finds it unpersuasive in the factual circumstances presented here. It further finds, on the basis of the Second Circuit's binding statements in Solina and Rondon, that Mr. Munoz's informed decision to retain an unlicensed paralegal to draft his appellate brief constitutes a valid waiver of any objection he may otherwise have had to the arrangement between Palomares and Deters, regardless of how the issue may be treated by district courts in other circuits.

Copies of the foregoing memorandum and order were electronically sent to:

Counsel for the Petitioner

Andrea Hirsch
111 Broadway
Suite 1305
New York, NY 10006

Counsel for the Government

Marisa M. Seifan
United States Attorneys Office
271 Cadman Plaza East
Brooklyn, NY 11201